IN THE UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION


IN RE:        STANLEY AND HOLLY COOPER,        CASE  NO.  4:07-bk-12532M
                                               (CHAPTER 7)
              Debtors.

REGINA A. SMITH, AND RONALD SMITH, AND
TLR COFFEE HOUSE, INC.                                          PLAINTIFFS

VS.                        AP NO. 4:07-ap-1222

STANLEY COOPER AND HOLLY COOPER                              DEFENDANTS


MEMORANDUM OPINION

On May 14, 2007, Stanley M. Cooper and Holly D. Cooper ("Debtors")[1] filed a voluntary

petition for relief under the provisions of Chapter 7.   Richard L. Cox was duly appointed

Trustee.

On August 10, 2007, Regina Smith, Ronald Smith and TLR Coffee House, Inc.

(Plaintiffs) filed a complaint objecting to both Debtors' discharge pursuant to 11 U.S.C. §

727(a)(2), 11 U.S.C. § 727(a)(3), 11 U.S.C. § 727(a)(4) and 11 U.S.C. § 727(a)(5).   The

Plaintiffs also alleged that the dischargeability of  particular debts owed to them should be

denied pursuant to 11 U.S.C. § 523(a)(2)(A), 11 U.S.C. § 523(a)(4) and 11 U.S.C. § 526(a)(6)

and also sought to establish an unliquidated claim.  The Trustee did not file a separate action

---

[1]Mr. Cooper will be referred to in most instances in this opinion as "Debtor" and
Mrs. Cooper will be referred to as Mrs. Cooper except where the context supports
the use of the term "Debtors".  This approach is required because Mrs. Cooper was not
an active participant in most of the relevant events.

EOD 1/13/2009
by P Becker

against the Debtors, but participated in the complaint objecting to the Debtors' discharge for the alleged violations of 11 U.S.C. § 727(a)(3); 11 U.S.C. § 727(a)(4) and 11 U.S.C. § 727(a)(5).

The Plaintiffs' allegations are based on various provisions of the Bankruptcy Code dealing with the general discharge and the dischargeability of individual debt but the complaint does not address the  differing status of each of the plaintiffs.  During the relevant period, Regina A. Smith owned 49% of the outstanding stock in TLR Coffee House, Inc. ("TLR"), and was a director/secretary of the corporation.  Ronald A. Smith is Regina A. Smith's husband and did not own any stock in TLR, but was a director of the corporation.   The Smiths are creditors of TLR because some of their assets were used as collateral for loans to TLR.  The Smiths claim to be creditors of both of the Debtors.  TLR is also a plaintiff in the case, but its standing as a plaintiff in this action is questionable because the owner of 51% of the stock in TLR is owned by the Debtor, Stanley Cooper, and there is nothing in the record authorizing Regina Smith or her attorney to act on behalf of TLR.[2]

The Debtors filed a timely Answer denying the allegations of the complaint.  The matter was tried in Little Rock, Arkansas, on May 29, 2008, and was taken under advisement.  The Plaintiffs, the Debtors, and the Trustee have  filed briefs in this matter.

The proceeding before the Court is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I)&(J)(2006), and this Court has jurisdiction to enter a final judgment in the case.  The following shall constitute the Court's findings of fact and conclusions of law pursuant to Federal

---

[2]    At the hearing, when asked if any attorney was present representing the corporation, Mr. Keech, the  attorney for the Plaintiffs answered, "No, Your Honor."  (Tr. at 10.)  The Trustee,  Mr. Cox, owns 51% interest in TLR and he filed no complaint on its behalf.

2

Rule of Bankruptcy Procedure 7052.

BACKGROUND

In January 2005, TLR was operating a restaurant on Kavanaugh Boulevard in Little Rock, Arkansas, under the trade name "The Living Room." (Tr. at 89-90.)  The corporation was owned 51% by Regina Ann Smith ("Smith") and 49% by Charlotte Lang.  Sometime around January 2005, the restaurant premises suffered severe damage from flooding due to a clogged drain.  (Tr. at 89-90.)  Lang declined to  contribute more funds to the business, and she sold her 49% interest in TLR to the Debtor for the sum of $30,000.00.  (Tr. at 90.).  The transfer of stock occurred sometime between March and May 2005.

 On or about March 24, 2005, Smith transferred two shares of her stock in TLR to the Debtor (Pl.'s Ex. 20 at C-1)  for the sum of $600.00 or $700.00,  making the Debtor the majority shareholder of TLR.  (Tr. at  215.)  As a result the Debtor became a director and president-treasurer of TLR.  (Pl.'s Ex. 20.)  The Debtor represented himself as a successful restauranteur and was the current owner of a Colton's Steakhouse located at Asher and University Avenue in Little Rock, Arkansas.

After the Debtor became involved in the business, the decision was made to change the trade name  to So Restaurant and totally renovate the premises.  (Tr. at 92.).  The object of the renovation and name change was to create an upscale restaurant.  (Tr. at 93.)  The plan was that the Debtor would operate the restaurant and Smith would handle financial matters.

According to Smith, the renovation lasted from May 2005 to January 2006, and during this time, the restaurant was closed.   The renovation  was financed by a loan from Twin City Bank in the sum of $400,880.00.  (Pl.'s Ex. 5.)  The loan proceeds were intended to pay for all of

3

the construction costs,  including $89,000.00 for new furniture and kitchen equipment.  (Pl.'s Ex. 5.)

The note to Twin City Bank is dated August 10, 2005, and is signed by the Debtor  and Smith on behalf of TLR and is guaranteed personally by the Debtor and the Smiths.  The note was  secured by the Smiths' pledge of marketable securities and a perfected security interest in the equipment, furniture and fixtures of TLR d/b/a So Restaurant and Bar.  The collateral that included the personal property was itemized on a list of furniture and equipment purporting to be purchased from Southwest Wholesale in Dallas, Texas, and from Krebbs Brothers Restaurant Supply Company, Inc., of Little Rock, Arkansas. (Pl.'s  Ex. 5,  Tr. at 54-58.)  Smith testified that the Debtor was supposed to put up personal collateral, but that he never did.   (Tr. at 99.)

Midway through the construction phase of the renovation the Debtor had the bank statements from the restaurant's Twin City Bank account sent to his post office box, thereby limiting Smith access to the statements.   This was done in August or September of 2005.  (Tr. at 102.)  Smith was able to get copies of the bank statements from the bank and soon realized that money was being transferred by the Debtor to an entity called 341, Inc., which was the corporate name of the Colton's Steakhouse separately owned by the Debtor. (Tr. at 102.)  The Debtor explained that he was reimbursing 341, Inc.,  for expenses that 341, Inc., had paid on TLR's behalf.

So Restaurant opened for business beginning in January 2006 and between January 2006 and December 2006, Smith received calls from Twin City Bank complaining of overdrafts in the operating account.   Finally, at the Bank's insistence, the checkbook was transferred over to Smith and away from control of the Debtor.

4

The Plaintiffs complain about two transactions in particular.  In one transaction, the Debtor, on behalf of TLR, entered into an equipment lease financed by an additional loan of $86,665.08 from Arvest Bank on or about February 15, 2006.  The Debtor, Stanley Cooper, pledged the same restaurant equipment he purchased from Krebb's Brothers in Little Rock that he had already pledged on behalf of TLR to Twin City Bank as collateral for the original construction loan.  The loan proceeds of $86,665.08 were used to pay delinquent invoices to Krebbs Brothers for the restaurant equipment.  The Debtor kept this transaction secret from Smith.[3]

In the second transaction, the Debtor borrowed the additional sum of $75,000.00 on behalf of TLR from a business known as "Advance Me, Inc."   The Debtor pledged the restaurant's accounts receivable as collateral.  (Tr. at 188.)   The loan proceeds were deposited into the restaurant bank account.  Smith alleged and testified that  she did not consent to the transaction and had no knowledge of it.  (Complaint at ¶ 23.)

Smith examined TLR's  banking  records and found numerous transactions that she considered questionable;   she introduced these into evidence as Plaintiff's Exhibit 1.  The exhibit is a compilation of the questionable charges and other items including loans to TLR by the Smiths.  She and her husband have asked this Court for a nondischargeable judgment in the sum of $785,389.95 against both Debtors.[4]  The Debtor left the business in January 2007 and Smith took over total control even though she only owned a 49% share of the stock.  The

---

[3]Smith claims that one of the corporate documents submitted to Arvest in connection with the loan contains her forged signature.

[4]The complaint alleged $300,000.00.

Debtors filed a joint Chapter 7 petition in May 2007.

<u>DISCUSSION</u>

<u>OBJECTIONS TO DISCHARGE</u>

11 U.S.C. § 727(a)(3)

The Plaintiffs alleged that the Debtors violated the provisions of 11 U.S.C. § 727(a)(3), which states that a discharge will be denied to a debtor who "has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information . . . from which the debtor's financial condition or business transactions might be ascertained . . . ."

The allegations related to failing to keep or preserve records include the following acts:

> the execution of the Equipment Lease and the Merchant Agreement, the changing of the name of the true Secretary of TLR with the Arkansas Secretary of State, engaging in Questionable Transfers, and failing to fully disclose and schedule all assets and liabilities and the Debtors' pre-petition affairs, and such other conduct as may be discovered during discovery . . . evidence the Debtors have concealed, destroyed, mutilated, falsified, or failed to keep or preserve recorded information . . . from which the debtor's financial condition or business transactions might be ascertained, all in violation of 11 U.S.C. § 727(a)(3).

(Complaint at 9.)

Under this statute, the debtor has an affirmative duty to create records accurately documenting his financial affairs. <u>Peterson v. Scott (In re Scott)</u>, 172 F.3d 959, 969 (7th Cir. 1999) (citing <u>In re Juzwiak</u>, 89 F.3d 424, 429 (7th Cir. 1996)); <u>Meridian Bank v. Alten (In re Alten)</u>, 958 F.2d 1226, 1230-31 (3d Cir. 1992); <u>In re Connors</u>, 273 B.R. 764, 769-70 (Bankr. S.D.Ill. 2001) (citing <u>In re Juzwiak</u>, 89 F.3d at 427)). The law recognizes that the trustee and creditors in the case are entitled to accurate information showing what property has passed through the debtor's hands prior to bankruptcy. The Debtor's record-keeping must enable his

6

creditors to "learn what he did with his estate."   In re Beshears, 196 B.R. 468, 474 (Bankr.

E.D.Ark. 1996) (quoting Koufman v. Sheinwald, 83 F.2d 977 (1st Cir. 1936)).

     The Code requires written evidence from which the debtor's financial condition may be

ascertained.   In re Kowalski, 316 B.R. 596, 601 (Bankr. E.D.N.Y. 2004) (citing McCord v. Sethi

(In re Sethi), 250 B.R. 831, 838 (Bankr. E.D.N.Y. 2000) (citing Barristers Abstract Corp. v.

Caulfield (In re Caulfield), 192 B.R. 808, 823 (Bankr. E.D.N.Y. 1996))).   Intent by a debtor to

conceal his financial condition  is not an element required for denial of discharge based on

failure to keep adequate records. St. Francis County Farmers Ass'n. v. Wright (In re Wright),

353 B.R. 627, 649 (Bankr. E.D. Ark. 2006)(citing In re Pulos, 168 B.R. 682 (Bankr. D.Minn.

1994)); In re Kowalski, 316 B.R. at 602 (citing Thale v. Erdheim (In re Erdheim), 197 B.R. 23,

29 (Bankr. E.D.N.Y. 1996) (citing In re DeLancey, 58 B.R. 762, 767-68 (Bankr. S.D.N.Y.

1986)))).

     No extended discussion under this section is necessary because the evidence is that the

Debtors kept records of their financial affairs sufficient to file a detailed, complicated tax return

for 2005 and 2006.  Apparently none of the Plaintiffs have  sought to examine the records which,

according to the testimony, are reposed in the possession of the Debtors' accountant.  The record

in this case also contains voluminous financial documents belonging to  TLR that are now in the

possession of Smith.

11 U.S.C. § 727(a)(4)

     The Bankruptcy Code provides that a debtor will not receive a discharge if the debtor

"knowingly or fraudulently, in or in connection with the case . . . made a false oath or account . .

. " 11 U.S.C. § 727(a)(4) (2006).   The Plaintiffs and the Trustee argue in their briefs that the

7

Debtors have made false oaths on their bankruptcy petition in violation of Section 727(a)(4). They focus on three specific omissions from the petition. However, the Plaintiffs' complaint makes no specific factual allegations concerning the three omissions referred to in the briefs. The complaint only alleges generally that the Debtors failed to fully disclose the Debtor's prepetition affairs and failed to disclose and schedule all assets and liabilities.

With respect to allegations of fraud, "a party must state with particularity the circumstances constituting fraud . . ." Fed. R. Bankr. P. 7009(b). Section 727(a)(4) "sounds in fraud and, therefore, is governed by the specificity requirements of Fed. R. Bankr. P. 7009." Ehle v. Brien (In re Brien), 208 B.R. 255, 257 (B.A.P. 1st Cir. 1997). See also Bunch v. Kerr (In re Kerr), 58 B.R. 171, 173 (Bankr. E.D. Ark. 1985)(stating the pleading must state a factual basis to support allegations of fraud)(citing In re Metro Equip. & Rental Corp, 28 B.R. 579 (Bankr. N.D. Ohio 1983)). The complaint in this particular case does not conform to this rule of procedure.

Thus, as a threshold matter, the Court must determine whether the complaint's lack of specificity with regard to the three omissions prevents the Plaintiffs from prevailing on their objection to discharge under section 727(a)(4). Federal Rule of Bankruptcy Procedure 7015(b)(2) provides in relevant part that "[w]hen an issue not raised by the pleadings is tried by the parties' express or implied consent, it must be treated in all respects as if raised in the pleadings."

The Bankruptcy Rules allow the Court, sua sponte, to permit pleadings to be amended to conform to the proof when the issues are tried by the implied consent of the parties and no objection is raised to the introduction of evidence of the unpleaded facts. Ehrichs v. Kearney,

8

730 F.2d 1170, 1171  (8th Cir. 1984); In re Barton, 321 B.R. 869, 875 (Bankr. N.D. Ohio 2004);

In re Lett, 238 B.R. 167, 188 (Bankr. W.D. Mo. 1999).  The evidence regarding the three

specific omissions to the petition was admitted without objection; therefore, the Court finds that

the pleadings are amended to conform to the proof.   In re Woodcock, 45 F.3d 363, 368 (10th Cir.

1995).

At trial, the Plaintiffs adduced evidence of omissions with regard to two questions on the

Debtors' Statement of Financial Affairs.  Question 2  asks the Debtors to "[s]tate the amount of

income received by the debtor other than from employment, trade, profession, or operation of the

debtor's business during the **two years** immediately preceding the commencement of the case."

(Pl.'s Ex. 15.)  Question 10(a) asks the Debtors to supply the following information: "List all

other property, other than property transferred in the ordinary course of business or financial

affairs of the debtor, transferred . . . within **two years** immediately preceding the commencement

of this case." (Pl.'s Ex. 15.)

The Debtors answered "none" to both questions, and the answers were false.  The Debtor

omitted three transfers that should have been listed.  One of the three transfers occurred on June

15, 2006, when the Debtor  sold 190 shares of Colton's Restaurant Group Inc. stock  for the total

sum of $216,410.00.

Under the terms of the agreement, the Debtor received $40,000.00 with the execution of

the agreement and the sum of $102,830.00 on or before June 26, 2006. (Pl.'s Ex. 10.)  Colton's

Restaurant Group gave the Debtor a note for the balance of $73,580.00 and interest of 6.5

percent per annum.  The Plaintiffs presented evidence that the Debtor later received payments on

the note  from Colton's Restaurant Group for  $15,000.00 on December 1, 2006, and $18,435.78

9

on February 22, 2007.   The Debtors' 2006 joint tax return reflected this transaction on Schedule D, which resulted in taxable income in the form of a capital gain of $178,177.00. (Pl.'s Ex. 4.) The Debtors also reported interest income of $2,362.00 as part of the transaction on Schedule B of the joint tax return.  (Pl.'s Ex. 4.)

Another  transaction the Debtors failed to disclose was the distribution from an IRA in 2006 in the sum of $12,148.00.  This distribution was also included as income in the Debtors' joint 2006 federal tax return. (Pl.'s Ex. 4, 2006 tax return.)

A third transaction the Debtors failed to disclose occurred on November 15, 2005, when the Debtor redeemed his 83 shares of stock in Spa City Steaks, Inc., for the sum of $59,970.00. (Pl.'s Ex. 12. ) He received an initial payment of $50,000.00 on November 14, 2005, and a note for the remaining $9,970.00.  On March 1, 2006, he received  checks for $9,970.00 and $186.95, representing payment on the remaining principal and interest owed on the note.  (Pl.'s Ex. 13.) The transaction  resulted in capital gain income of $14,055.00 as reported on the Debtors' 2005 joint tax return.

### Applicable law related to section 727(a)(4)

To prevail in a complaint brought pursuant to 11 U.S.C. § 727(a)(4)(A), the plaintiff must establish that (1) the debtor made the statement under oath; (2) the statement was false; (3) the statement was made with fraudulent intent; (4) the debtor knew the statement was false; and (5) the statement related materially to the debtor's bankruptcy.  Jacoway v. Mathis (In re Mathis), 258 B.R. 726, 735 (Bankr. W.D. Ark. 2000)(citing Oldendorf v. Buckman, 173 B.R. 99, 105 (Bankr. E.D. La. 1994)(citing In re Beaubouef, 966 F.2d 174, 178 (5th Cir. 1992); In re Smith, 161 B.R. 989, 992 (Bankr. E.D.Ark. 1993))).

10

The plaintiff has the burden of proving facts essential to an objection to discharge by a preponderance of the evidence.  Grogan v. Garner, 498 U.S. 279, 291 (1991).  However, once a creditor has introduced evidence that the debtor committed any of the prohibited acts, the debtor has the burden of coming forward with the evidence to explain his conduct.  Ramsay v. Jones (In re Jones), 175 B.R. 994, 997 (Bankr. E.D. Ark. 1994)(citing Jolles v. Freedman (In re Freedman), 693 F.2d 50, 51 (8th Cir. 1982)).

The Bankruptcy Code requires debtors to fully complete the schedules and statements of affairs under oath.  Korte v. Internal Revenue Service (In re Korte), 262 B.R. 464, 474 (B.A.P. 8th Cir. 2001); Cepelak v. Sears (In re Sears), 246 B.R. 341, 347 (B.A.P. 8th Cir. 2000)(citing 28 U.S.C. § 1746)).  Statements made with reckless regard for the truth are regarded as intentionally false.  In re Korte, 262 B.R. at 474 (citations omitted); Bold City VII, Ltd. v. Radcliffe (In re Radcliffe), 141 B.R. 1015, 1021 (Bankr. E.D. Ark. 1992).

Omissions from the schedules qualify as a false oath if they are made knowingly and with fraudulent intent.  In re Sears, 246 B.R. at 347(citing Mertz v. Rott, 955 F.2d 596, 598 (8th Cir. 1992)); In re Baldridge, 256 B.R. 284,  289 (Bankr. E.D. Ark. 2000); Ray v. Graham (In re Graham), 111 B.R. 801, 806 (Bankr. E.D. Ark. 1990).

 A debtor rarely admits fraudulent intent; therefore, the objecting party must rely on a combination of circumstantial evidence that suggests the necessary intent.  In re Jones, 175 B.R. 994, 1002 (Bankr. E.D. Ark. 1994)(citing McCormick v. Security State Bank, 822 F.2d 806, 808 (8th Cir. 1987.))  The debtor cannot then overcome that inference with an unsupported assertion of honest intent.  In re Mathis, 258 B.R. at 733 (citing In re Van Horne, 823 F.2d 1285, 1287 (8th Cir. 1987)).

11

The statement or omission is material if it bears a relationship to the debtor's business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of the debtor's property.  Mertz v.Rott, 955 F.2d at 598; In re Sears, 246 B.R. at 347.

The Debtor does not deny that he failed to list the three transactions mentioned above and that, therefore, the answers on the Statement of Financial Affairs were incorrect. Mrs. Cooper also admitted the two stock sales were not listed on the Statement of Financial Affairs, but she was never questioned about the redemption of the IRA.

 The Debtor defended  the omission of these transactions as an oversight that was excusable because of the  occurrence of extensive financial and personal problems that coincided with the petition  filing.  The Debtors' home in Little Rock and his business operated through 341, Inc were both  in foreclosure, his bank account was being garnished,  he suffered a death in the family, and he was  living apart from his family in Springdale, Arkansas, after business losses forced him to relocate to start a new job.   He testified that he first became aware of the omissions in April of 2008 when he was deposed by counsel for the Plaintiffs.

 The Debtor stated the $102,000.00  he received as partial payment for his Colton Restaurant Group stock was deposited into his Pulaski Bank account and that his wife never saw any information about the account and  was not a signatory on the account.  (Tr. at 172.)  He testified that his Pulaski Bank  account is either closed or empty.  The Debtor also testified that he used the money from his stock sales in the operation of his two businesses, TLR and 341, Inc. (Tr. at 173.)  The Debtor admitted he was in financial trouble when he sold his Colton Restaurant Group stock for $276,410.00 (Tr. at 197) and further stated that  he now has nothing

12

left.  (Tr. at 253-254.)

The last installment on the note owed to the Debtor by Colton Restaurant Group was made on  February 22, 2007,  which was approximately three months prior to the date the Debtors filed their bankruptcy petition.  (Tr. at 205.)  The Debtor stated that most of the records that show when he received the money from the stock sale were given to his accountant, but he made no effort to bring the records to Court.  (Tr. at 218.)   He then stated that all of the personal records were kept in a file at his Colton's Steakhouse Restaurant site, and he had no access to them and made no effort to get them (Tr. at 219)  because the state closed his restaurant for failure to pay sales tax and would not permit  him to remove his records.  (Tr. at 224.)

In response to the Court's questions, the Debtor responded as follows:

THE COURT:   All right.   And you don't have any records you're going to present to me that explains what those transactions were?

THE WITNESS:        Hopefully, Jane can shed some light on it.

THE COURT:     All right.   Now, you indicated that your records – that you left all your records when the state closed down your other restaurant?

THE WITNESS:        Yes.

THE COURT:   Okay.  How did you prepare a 2006 tax return if you didn't have any records?

THE WITNESS:        2006?

THE COURT:        Yes, sir.

THE WITNESS:        Jane had the - - the records.

THE COURT:        So the records are available, she has them?

THE WITNESS:        If she would prepare my tax return, she should.

THE COURT:        Okay.  So you had to have those records to prepare the return,

13

didn't you?

THE WITNESS:          Yes.

THE COURT:          For the corporate records, for her to put down an accurate number as to how much money you were paid by Colton's, right?

THE WITNESS:          Right.

THE COURT:          That you've got income of 100, 315 dollars for 2006?

THE WITNESS:          Those are the paychecks.

THE COURT:          Right.   The paychecks?

THE WITNESS:          Yeah.   Yeah.

THE COURT:          All the rest of the income was capital gains or IRA for 2006?

THE WITNESS:          Okay.

THE COURT:          All right.  So you are telling me - - is it incorrect then that those records are unavailable, that they in fact are available for Colton's?

THE WITNESS:          I just said I didn't have them on my possession.

THE COURT:          But your accountant had them?

THE WITNESS:          Yeah, she should have some copies.

THE COURT:          And you know your accountant had them because she prepared your tax return, right?

THE WITNESS:          I haven't asked her if she had them.

THE COURT:          Well, you know she has them, don't you, if she did your tax return?

THE WITNESS:          Yes, she should have them.

THE COURT:          All right.  Why did you tell me that they were unavailable if your accountant has them and prepared your tax return from them?  Are you trying to deceive me?

14

THE WITNESS:        No, sir.

(T. 277-279).

The Debtor is a high school graduate and has attended college but does not have a degree. He has extensive experience in the restaurant business, having worked for the Bonanza restaurant chain for 20 years before becoming associated with the Colton's restaurant chain. Beginning in 2002 or 2003, he operated a Colton's Steakhouse in Little Rock through his corporation, 341, Inc. In 2005, he acquired 51% interest in TLR and spearheaded the transition of the premises to an upscale eating establishment.

    Moreover, the liquidations of his interest in Spa City Steaks and Colton's Restaurant Group were complex transactions involving cash payments together with the execution of promissory notes in favor of the Debtor. Because of his extensive experience in business, the Debtor's testimony is unconvincing. His rope-a-dope response to many questions about the liquidation of his assets and the disposition of the proceeds was, "I don't know." He made no effort to bring records to show what happened to the money he received. The most compelling evidence pointing to fraudulent intent is the fact that the two stock transactions totaling $276,380.00 represented a substantial portion of the joint Debtors' liquid assets on the eve of the filing of the bankruptcy petition. The evidence is not believable that one could forget such significant transactions so close to the date the petition was filed.

    The evidence establishes by the required preponderance of the evidence that the omissions by Debtor Stanley Cooper were made under oath knowingly, intentionally, and with fraudulent intent. The omissions were material as they bear a relationship to the Debtor's estate and concern discovery of transfers of his assets and the disposition of his property. Therefore,

the discharge of Stanley Cooper will be denied for violation of the provisions of 11 U.S.C. § 727(a)(4).

      While the Court has found that Debtor Stan Cooper must be denied a discharge  pursuant to section 727(a)(4), the case against Mrs. Cooper is not so persuasive.   To prevail on an objection to discharge for making a false oath or account, a plaintiff must prove each element of the statute.  Thus, the Plaintiffs in this case must show not only that  Mrs. Cooper made the false oath but that she did so with  fraudulent intent.

      Fraudulent intent may in some instances be imputed from one spouse to the other under an agency theory if, in fact, one marital partner serves as the other's agent.  See, e.g.,  Walker v. Citizens State Bank (In re Walker), 726 F.2d 452, 453-54  (8th Cir. 1984)(remanding to the bankruptcy court on the issue of whether husband-debtor knew or should have known of his wife-agent's fraud such that fraud would be imputed to husband-debtor and his resulting debt would be nondischargeable).

      However, the Plaintiffs do not allege here that these joint debtors were in business together or otherwise maintained an agency relationship. When imputing fraudulent intent, courts distinguish between situations in which spouses are involved together in  business and those in which spouses do not jointly operate a business.  In the latter case, courts "generally hold that [fraudulent] intent will not be imputed from one spouse to the other in the absence of a business relationship." Agribank, FCB v. Gordon (In re Gordon), 293 B.R. 817, 823 (Bankr. M.D. Ga. 2003) (citations omitted).

      Thus, more than the marital relationship is necessary to impute  fraudulent  intent between spouses so that discharge will be denied. As one court has observed, the sins of one

spouse are not automatically visited upon the other.  Gannett v. Carp (In re Carp), 340 F.3d 15, 26 (1st Cir. 2003) (stating that wife's discharge would not be denied for failing to list a contingent equitable interest in real property when she had made no contribution to the purchase of the property and it was not part of the estate at the relevant period).  See also  Cole Taylor Bank v. Yonkers (In re Yonkers), 219 B.R. 227, 233 (Bankr. N.D. Ill. 1997) (stating that husband-debtor's failure to disclose second source of income on schedules and at creditor's meeting was a false oath as to husband but not as to wife who was a joint debtor)(citing 11 U.S.C. § 302;  Ageton v. Cervenka (In re Ageton), 14 B.R.  833 (B.A.P. 9th Cir. 1981)); United States v. Towe (In re Towe), 147  B.R. 545 (Bankr. D. Mont. 1992)(refusing to impute husband's fraudulent intent to debtor-wife on the basis that she might have benefitted or even had knowledge of his conduct) (citing In re Mart, 75 B.R. 808 (S.D.Fla. 1987)),  aff'd, 74 A.F.T.R.2d  947423 (D.Mont.1994), aff'd, 97 F.3d 1461 (9th Cir. 1996);  Soft Sheen Prod., Inc. v. Johnson (In re Johnson), 98 B.R. 359, 366 (Bankr. N.D. Ill. 1988) (finding that debtor-spouse would not be denied a discharge absent a showing that she was knowingly involved in fraudulent concealment or failure to explain loss of assets even though she worked in the business, owned stock in the company and signed the petition).

        In accord are the cases focusing on joint debtors defending a claim under Section 523(a)(2), the exception to discharge of a specific debt incurred by fraud.  In those cases courts reach the same conclusion that the marital relationship alone does not justify imputing fraudulent intent from one spouse to another.  See, e.g.,  Allison v. Roberts (In re Allison), 960 F.2d 481, 485 (5th Cir. 1992)(stating debtor-wife's mortgage debt was not excepted under 523(a)(2)(A) because wife was not involved in the fraudulent mortgage transaction); In re Gordon, 293 B.R. at

17

828 (finding that under 523(a)(2)(B) dischargeability exception, the spouses were not partners in farming operation and marital relationship  did not itself provide sufficient basis for imputing fraud to debtor-wife); Taylor Freezer Sales v. Oliphant (In re Oliphant), 221 B.R. 506, 511 (Bankr. D. Ariz. 1998)(recognizing that plaintiff is required to show culpable conduct by innocent spouse for debt to be held fraudulent and nondischargeable); Leone v. Shane (In re Shane), 80 B.R. 240, 242  (Bankr. S.D. Fla. 1987) (refusing to impute actual fraud between spouses without specific action by both spouses that could be "construed as moral turpitude or intentional wrong" on the part of the debtors).

In the instant case, the Plaintiffs adduced the following evidence that specifically relates to Mrs. Cooper.  She graduated from high school and attended college but lacks 21 credit hours to obtain a bachelor of arts in political science.  Mrs. Cooper worked as a waitress in college more than ten years ago and is now a stay-at-home mother and wife described by her attorney as a "soccer mom."  (Tr. at 96.)   Prior to bankruptcy, she helped her attorney prepare the schedules and statement of  affairs and later read, understood, and signed the various bankruptcy papers.

As to the sale of CRG stock, Mrs. Cooper stated that she was aware her husband had at one point sold his stock but did not know the details of the transaction.  (Tr. at 74, 76.)  She testified that during the relevant period, she paid the household bills and kept the household books most of the time and was usually the one to reconcile the bank statements for the couple's joint account at the Bank of Little Rock.  However,  she testified that she  did not recall either a $40,000.00 or a $102,000.00 deposit into her household account  at the Bank of Little Rock.  On the date of the hearing, she had not examined her bank statements to determine whether any

18

unusual and large sums from the sale had been deposited during the relevant period.  Her

answers to the questions about interest earned on the note, as reflected by her income tax return,

suggested she either was  unaware that the note connected with the sale had earned interest or

did not know how much interest was generated.

As to the sale of Stan Cooper's stock in Spa City Steaks, Inc., Mrs. Cooper knew the

stock had been sold but did not know how much was paid for the stock or precisely when the

transaction took place.  She signed her tax returns for 2005 and 2006, but did not testify as to

when she signed them and the exhibits are unsigned, undated copies.

The Plaintiffs argue that the omission from the Statement of Financial Affairs of the two

stock sales and the redemption of the Debtor's Individual Retirement Account amounts to a false

oath or account that dictates denial of Mrs. Cooper's discharge.  However, the evidence reflects

that Mrs. Cooper was not active in the Debtor's  various restaurant enterprises, did not own the

CRG or Spa City Steaks stock, was never employed by either entity, and did not participate in

the negotiations for the sales of the stock.

Further, the evidence shows that the Debtor alone signed all relevant transfer

documents, that he alone received payment for the shares of stock, and that at least most of the

sales proceeds was deposited into his individual account at Pulaski Bank.  The Plaintiffs failed to

show that Mrs. Cooper possesses any particular financial acumen, that she advised her husband

with regard to the omitted transactions,  or that she and her husband made joint decisions with

regard to his business interests. Thus, it is reasonable to infer that Mrs. Cooper was vaguely

aware of the stock transfers but was unaware of the specifics of the transactions or how  her

husband  used the money.   Furthermore,  when Holly Cooper took the witness stand,  she was

19

not asked one single question with regard to the IRA redemption, not by counsel for the Plaintiffs, the Trustee, her attorney, or the Court.

Mrs. Cooper testified credibly that she did not remember receiving and spending any of the proceeds from either the CRG or Spa City Steaks transactions. It is true that the bank statements for her household account could have corroborated this statement and that she had not reviewed those statements prior to testifying.  But it is also true that the complaint made no mention of these two transactions, and, thus, the complaint failed to put her on notice that she might be called upon to rebut allegations of fraud with regard to the omissions regarding the stock sale.

Because  Holly Cooper was not  directly  involved in the two transactions and because there is no evidence that she ever received and spent the proceeds, the Court infers that she omitted  the transactions from the Statement of Financial Affairs inadvertently.  The fact that she signed joint tax returns showing the transactions as income for the years 2005 and 2006 does not change the Court's conclusion.  The 2006 tax return listing the IRA and the sale of the CRG stock was not filed until after the Debtors filed their joint petition. (See Plaintiffs' Exhibit 15, Statement of Financial Affairs, Answer to Question 1 stating 2006 return not yet filed.)   The 2006  return memorializes the CRG stock sale and IRA redemption, but the fact that the return did not exist at the time of the petition filing  diminishes the weight the Court would otherwise accord this evidence.  The 2005 return shows income from the sale of Spa City Steaks stock, demonstrating that at some time in the past, Mrs. Cooper was put on notice as to the sale.  However,  the tax return, by itself, is not enough evidence from which to infer an intentional omission for the purpose of defrauding  creditors when it is also evident Mrs. Cooper was not

involved in the Debtor's stock sale or any of his business dealings.

All circumstances considered, the Court finds that Mrs. Cooper omitted the two stock sales inadvertently and without fraudulent intent. As to the redemption of the IRA, the Plaintiffs adduced no evidence to prove that Mrs. Cooper even knew about the transaction when she filed her bankruptcy petition. That being the case, Mrs. Cooper's discharge will not be denied for making a false oath or account.

11 U.S.C. § 727(a)(5)

The Plaintiffs and the Trustee argue in their briefs that the Debtors' discharge should also be denied for violation of 11 U.S.C. § 727(a)(5). This section provides in relevant part that a discharge will not be granted if the "debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities."

As explained by one court, "once a creditor has established the debtor owned substantial and identifiable assets, a debtor must satisfactorily explain loss of such assets. The explanation should be sufficient that the court does not have to speculate as to what happened to the assets or speculate as to the veracity of the explanation." In re Beshers, 196 B.R. 468, 472-73 (Bankr. E.D. Ark. 1996) (citing Bay State Milling v. Martin (In re Martin), 145 B.R. 933 (Bankr. N.D. Ill. 1992)). Judge Federman, in the case of In re Sendecky, stated, "[i]f a party demonstrates a deficiency of assets, the burden shifts to the debtor to explain the loss. If the explanation is too vague, indefinite, or unsatisfactory then the debtor is not entitled to a discharge. The explanation given by the debtor must be definite enough to convince the trial judge that assets are not missing." 283 B.R. 760, 766 (B.A.P. 8th Cir. 2002). See also In re Wynn, 261 B.R. 286, 304

21

(Bankr. M.D. Ala. 2001) (vague and indefinite answers such as money was spent . . . held not sufficient).

Once a creditor has shown a basis for the objection under this section, the burden shifts to the debtor to explain the loss of his cash assets in a satisfactory manner.  Chalk v. Mearfield, 748 F.2d 616, 619 (11th Cir. 1984).  See also  In re Duppre, 197 B.R. 928, 938 (Bankr. N.D. Ala. 1996)(debtor provided no documents to account for the dissipation of $11,000.00 cash); In re Bell, 156 B.R. 604, 606 (Bankr. E.D. Ark. 1993) (debtor's explanation of loss of assets was "unsubstantiated, uncorroborated and undocumented").

In this case, the Debtor Stanley Cooper  made not the slightest effort to document what became of the cash proceeds from the sale of stock and redemption of an IRA.   The Plaintiffs showed that the proceeds of the stock sale were deposited into a bank account at Pulaski Bank and although the records were in possession of the Debtor's accountant, no effort was made to produce the records or even a summary.  The Debtor  stated only that the money was used in the business of TLR and 341, Inc., but no documentary proof corroborating this testimony was offered.[5]  When asked how the $12,000.00 from the IRA redemption was used, the Debtor replied, "[A]t our house I think, to do some stuff." (Tr. at 272.)

The evidence establishes by a clear preponderance that the Debtor Stanley Cooper has violated the provisions of 11 U.S.C. § 727(a)(5) by failing to  explain the deficiency of assets to meet  liabilities and, therefore, his discharge is denied.

As to Mrs. Cooper, there is scant evidence that she knew and  was thus able to explain

---

[5]

The Debtor stated the proceeds from the stock sale were deposited into a personal bank account and then, "I used it for 341, SO,  whatever."   (Tr. at 247.)

what happened to the funds generated from the sales of stock. Where a creditor has objected to the discharge of joint debtors for failure to explain loss of assets, courts have refused to deny a discharge to the spouse who did not own, control, and/or dissipate the assets.  See  Prairie Prod. Credit Ass'n v. Suttles (In re Suttles), 819 F.2d 764, 766(7th Cir. 1987) (affirming bankruptcy court's determination that debtor-husband's discharge would be denied but that debtor wife's failure to explain loss of assets resulted from honest mistake and her discharge would not be denied);  Shaheen v. MacPherson (In re MacPherson), 101 B.R.  324, 326  (Bankr. M.D. Fla. 1989)(denying debtor husband's discharge but overruling objection to debtor wife's discharge because no evidence proved she actively participated in the disposition of missing funds although she may have technically had ownership of them), *aff'd*, 129 B.R. 259 (M.D. Fla. 1991);  Manhattan Leasing Systems v. Goblick (In re Goblick), 93 B.R. 771, 776 (Bankr. M.D. Fla. 1988 )(refusing to deny debtor wife's discharge for failure to explain loss of assets where most of the missing assets were owned by debtor husband); Equibank v. Ward (In re Ward), 92 B.R. 644, 647 (Bankr. W.D. Pa. 1988) (holding debtor wife guiltless because she did not know she owned missing equipment used in debtor-husband's business);  Bacon v. Hyers (In re Hyers), 70 B.R. 764, 769 (Bankr. M.D. Fla. 1987)(dismissing objection to discharge  of debtor wife where no evidence was adduced that she was involved in transaction between creditor and debtor husband that resulted in the missing assets).

The rationale for Section 727(a)(5) is that the debtor is in control of the assets and is in the best position to know what happened to those assets.  Wilmington Trust Co. v. Jarrell (In re Jarrell), 129 B.R. 29, 34 (Bankr. D.Del. 1991) (citing 4 Collier on Bankruptcy ¶ 727.08 (15th ed. 1979)).  In the instant case, the missing  funds related solely to Stanley Cooper's property and

his business dealings.  He negotiated the sales, received the payments, and deposited them into an account he exclusively controlled.  The Plaintiffs have failed to show any link between the monies received and Mrs. Cooper and her bank account or that she was in a position to be able to explain how the funds were used.  As to the redemption of the IRA, Mrs. Cooper was never questioned at the hearing about the whereabouts of the funds.

For the foregoing reasons, the Court concludes that the Plaintiffs' objection to the discharge of Mrs. Cooper pursuant to section 727(a)(5) is overruled.

<u>11 U.S.C. § 523(a)(2)(A);  11 U.S.C. § 523(a)(4); 11 U.S.C. § 523(a)(6) and
11 U.S.C. § 727(a)(2)</u>

The remaining counts relate to three dischargeability determinations pursuant to section 523(a) and an objection to discharge pursuant to section 727(a)(2).  With regard to these counts, the factual allegations in the complaint,  the evidence adduced at trial, and the facts argued by the Plaintiffs' post-trial brief pertained to the Debtor Stanley Cooper and his business dealings, principally while operating SO Restaurant.  For that reason, the remaining counts listed above will be dismissed as to Holly Cooper.

The Debtor Stanley Cooper's discharge has been denied for violation of 11 U.S.C. § 727(a)(4) and 11 U.S.C. § 727(a)(5), and this Court declines to  address the remaining counts stated above. These counts seek a finding of additional grounds to deny the Debtor's discharge, the determination of nondischargeability of debts incurred by the Debtor, and the liquidation of a $700,000.00 claim against both Debtors for various alleged reasons, including embezzlement, conversion and larceny of the funds belonging to TLR.

Much of the evidence produced by Plaintiffs' counsel concerned proof of the Debtor's

24

co-mingling of funds of TLR  with another of his corporations, alleged unauthorized withdrawals from TLR, and, in general, allegations of negligence by the Debtor in operating a corporation in which he was president and majority shareholder.  The Plaintiffs even ask for judgment for sums they voluntarily lent to  TLR.  The judgment is sought against both Debtors even though no evidence was introduced that Mrs. Cooper was involved.

As a general rule, a shareholder's cause of action against the majority shareholder is a derivative action, not a direct action.  Hames v. Cravens, 332 Ark. 437, 440, 966 S.W.2d 244, 246 (1998).  Arkansas also permits direct actions.  Id. (citing 12B Fletcher Cyclopedia of the Law of Corp., 5915, 5922 (Perm. E. 1984).   Certain defenses are available to the defendants such as the business judgment defense.  See   Long v. Langston, 324 Ark. 511, 521, 922 S.W.2d 682, 699 (1991).

The pleadings filed on behalf of the Plaintiffs do not fairly apprise the Debtors that they are the subject of a stockholder derivative or direct action suit.  The Court questions whether such an action is procedurally proper against  Mrs. Cooper since she was not a shareholder or officer of the corporation. In any case, it would be inequitable to permit the pleadings to be amended to conform to the evidence pursuant to Federal Rule of Bankruptcy Procedure 7015(b) because the Debtors did not have the opportunity to prepare a proper defense.

 Furthermore,  the Plaintiffs are diverse in character and include a minority shareholder and creditor of the corporation, a director and  creditor of the corporation, and the corporation itself.  The Court doubts that the corporation, rather than the Trustee, is even a proper party to this lawsuit.   These defects render a resolution of the remaining dischargeability issues impossible in Bankruptcy Court because they  directly involve the corporation's interests and the

corporation is not a proper party in this adversary proceeding.

The object of the proceedings in this Court was to determine the discharge of the Debtors.  Therefore, the Court abstains, pursuant to 28 U.S.C. § 1334(c)(1),  from considering the allegations under the subsections that are cited above without prejudice to the right of the proper plaintiffs to liquidate their claims against the Debtor Stanley Cooper  in the appropriate non-bankruptcy forum because the unliquidated claims have not been discharged.  See  In re Dennis, 218 B.R. 52 (Bankr. E.D. Ark. 1997) and cases cited therein.

A separate judgment consistent with this Memorandum Opinion will be entered pursuant to Federal Rule of Bankruptcy Procedure 7052.

IT IS SO ORDERED.

_____

U. S. BANKRUPTCY JUDGE

DATE: 01/13/08 _____

cc:     Richard L. Cox, Trustee
        Frederick S. Wetzel, III, Esq.
        Kevin P. Keech, Esq.
        Debtors

26